TEXTO COMPLETO DE LA SENTENCIA
El Departamento del Trabajo y Recursos Humanos (DTRH) nos solicita que revisemos las determinaciones sobre unidades apropiadas de la Comisión de Relaciones del Trabajo para el Servicio Público (Comisión), *557 notificadas el 14 de abril de 2003 y el 7 de noviembre de 2003, que crearon y reiteraron la creación de la Unidad Apropiada E para incluir el personal del Negociado de Conciliación y Arbitraje de Controversias Laborales en el DTRH (Negociado).
I
El 7 de junio de 1999, al amparo de la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, Ley Núm. 45 del 25 de febrero de 1998, 3 L.P.R.A. §§ 145l-1453(j) (Ley Núm. 45), la Unión General de Trabajadores (UGT) presentó en la Comisión una Petición de Representación para representar a todos los empleados de la Administración del Derecho al Trabajo (ADT).
El 15 de septiembre de 1999 se celebró la Sesión Especial para la Determinación de las Unidades Apropiadas, según dispone la Sección 309 del Reglamento Núm. 1 de la Comisión.
El 30 de mayo de 2001 se notificó la determinación de la Comisión en el caso ADT y UGT, PR-99-020 D-01-006, mediante la cual se aprobó la creación de cuatro unidades apropiadas en el DTRH: la Unidad A, que incluye todos los empleados de ADT; la Unidad B, que incluye todos empleados de la Administración para el Adiestramiento de Futuros Empresarios y Trabajadores (AAFET); la Unidad C, que agrupa todos los empleados del Consejo de Desarrollo Ocupacional y Recursos Humanos (CDORH); y la Unidad D, que agrupa todos los empleados de los programas restantes del DTRH.
El 5 de septiembre de 2001, la Hermandad de Empleados del Departamento del Trabajo (HEDET) sometió una Petición de Representación, donde proponía la creación de una unidad apropiada compuesta por todos los empleados de los programas restantes del DTRH, excluyendo a los empleados confidenciales y supervisores.
El 19 de diciembre de 2001 se celebró una Sesión-Especial bajo el nuevo Reglamento de la Comisión. Durante la Sesión Especial surgieron dudas sobre si se debía incluir al Negociado en la Unidad Apropiada D.
El 11 de abril de 2003, la Comisión emitió su Determinación Sobre Unidades Apropiadas en el caso DTRH y HEDET, PR-01-012 D-03-005, mediante la cual se determinó cuáles puestos estarían incluidos y cuáles excluidos de la Unidad D y se estableció la Unidad E, en la que se incluyó a los Mediadores de Conflictos Obrero-Patronales I, Mediadores de Conflictos Obrero-Patronales II, Mediador de Conflictos III y Mediadores de Conflictos IV.
El DTRH sometió una Moción de Reconsideración.el-5-de mayo de 2003., y_el 12 de mayo.de 2003-presentó. otras dos mociones solicitando excepciones a las composiciones de las Unidades Apropiadas D y E del DTRH. En sus escritos, entre otras cosas, el DTRH alegó que el derecho a la sindicación no debía ser extensivo a los mediadores de conflictos obrero-patronales y que las clases de mediadores deben estar excluidas de la Unidad E, ya que sus labores como mediadores de conflictos obrero-patronales los coloca en una situación de conflicto o de eventual conflicto de interés ante las partes que presentan las quejas y agravios ante ellos. De acuerdo con el DTRH, los mediadores deben ser clasificados como empleados confidenciales conforme la definición establecida en la Ley Núm. 45, 3 L.P.R.A. § 1451(a)(p), y ser excluidos de pertenecer a una unidad apropiada.
Mientras, el 28 de abril de 2003, la Unión de Empleados del Negociado presentó una petición en la Comisión para representar al grupo de empleados agrupados en la Unidad Apropiada E.
El 7 de noviembre de 2003, la Comisión reiteró su determinación en torno a la composición de la Unidad E mediante una Determinación Suplementaria de Unidades Apropiadas.
El DTRH presentó un recurso de revisión el 10 de diciembre de 2003. El 21 de enero de 2005, le solicitamos a las partes recurridas que presentaran escritos mostrando causa por la cual no debíamos revocar la *558 Determinación Suplementaria sobre unidades apropiadas que creó la Unidad E del Negociado. El 20 de abril de 2005, le notificamos al Procurador General una resolución aclaratoria y le solicitamos que se expresara sobre la jurisdicción de este foro para revisar las determinaciones de la Comisión sobre la Unidad Apropiada E del DTRH. El 9 de mayo de 2005, el Procurador General presentó el escrito solicitado.
Inconforme con la determinación de la Comisión sobre la Unidad E, el DTRH recurre ante nos y señala que:

“Erró la Comisión de Relaciones del Trabajo del Servicio Público al determinar que el Programa de Conciliación y Arbitraje de Controversias Laborales, también denominado como el Servicio de Mediación y Conciliación en el Negociado de Conciliación y Arbitraje en el Departamento del Trabajo, deben estar incluidos como unidad apropiada para propósitos de organización y negociación colectiva. ”

Contando con el beneficio de la comparecencia de todas las partes con interés en la controversia ante este foro, procedemos a resolver.
II
Antes de evaluar el señalamiento de error levantado por el DTRH y por ser un asunto privilegiado, es necesario fundamentar nuestra jurisdicción aun en ausencia de un planteamiento formal a tal efecto. A.A.A. v. Unión, opinión del 11 de diciembre de 2002, 2002 J.T.S. 155.
El caso que tenemos ante nosotros requiere la revisión de una determinación de la Comisión sobre el proceso de certificación de un representante exclusivo en el DTRH. La Comisión es la entidad creada por la Ley Núm. 45, supra, para interpretar, aplicar y hacer cumplir las disposiciones de la ley en todo lo relativo a procesos de organización, certificación, descertificación de sindicatos, procedimientos relacionados con la conciliación y el arbitraje de negociaciones de convenios colectivos, procedimientos de prácticas ilícitas y otros que se le hayan delegado.
El recurrente, DTRH, comparece ante nos y sostiene que este foro tiene jurisdicción para entender en la controversia sobre la determinación de unidad apropiada bajo las siguientes disposiciones de ley: el Artículo 4.006(c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley Núm. 201 del 22 de agosto de 2003, el Reglamento Transitorio del Tribunal de Apelaciones del 18 de noviembre de 2003, Regla 56, et seq, la Ley Núm. 45, Artículo 10 § 10.1, 3 L.P.R.A. 1452(d), el Reglamento de la Comisión §§ 300, 309 y 316 y la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 del 12 de agosto de 1988, según enmendada, §§ 1.3(a)(7), 4.1, 4.2, 4.3, 4.4, 4.5 y 4.6, 3 L.P.R.A. §§ 2102(a)(7), 2171, 2172, 2173, 2174, 2175 y 2176. También sostiene que la jurisdicción de este Tribunal surge de los casos A.A.A. v. Unión de Abogados, supra; Hospital del Maestro v. Unión, 151 D.P.R. 934 (2000), y U.P.R. v. Asociación de Profesores, 136 D.P.R. 335 (1994).
El DTRH también plantea que si la controversia se resolviera a su favor, se dispondría del caso de forma final; por lo tanto, la determinación de la Comisión de incluir a los mediadores en una unidad apropiada es revisable por este Tribunal.
Por su parte, en su comparecencia ante este, foro la Comisión planteó que el procedimiento para la determinación de unidades apropiadas es de naturaleza investigativa, no adversativa y que la facultad de determinar unidades apropiadas bajo la Ley Núm. 45 está delegada sólo a ellos y conforme a los parámetros que dispone la ley. En consecuencia, tiene jurisdicción exclusiva sobre las determinaciones de unidad apropiada bajo dicha ley.
En la comparecencia especial que le solicitamos al Procurador General, éste cita el Artículo 11 de la Ley Núm. 45, supra, que nos concede jurisdicción para entender en los recursos de revisión de órdenes y *559 resoluciones finales de la Comisión. Argumenta, además, que el Tribunal Supremo ha creado excepciones a la jurisdicción exclusiva del organismo administrativo en las determinaciones de unidad apropiada.
El Procurador General apoya sus planteamientos en el caso de A.A.A. v. Unión de Abogados, supra, en el cual el Tribunal Supremo expresó que aun cuando la Junta de Relaciones del Trabajo (JRT) tiene jurisdicción exclusiva para determinar, en primera instancia, quiénes pueden integrar una unidad apropiada para fines de negociar colectivamente, ello no impide que el Tribunal ejerza su facultad para decidir determinadas controversias, aunque ello implique revisar órdenes emitidas por la JRT en una etapa previa a un procedimiento de práctica ilícita. Reconoce, no obstante, que para que la intervención del foro judicial sea posible, se requiere que la controversia involucre circunstancias muy particulares, tales como: que la controversia afecte los derechos de índole constitucional; que gire sobre cuestiones jurídicas noveles; entrañe asuntos de gran trascendencia para el interés público; o, cuando el asunto es determinativo respecto del derecho que invocan quienes solicitan se les certifique como una unidad apropiada con el fin de proceder a la negociación colectiva.
En síntesis, nos plantea el Procurador que la jurisdicción del tribunal procede cuando la controversia gira en tomo a la facultad de la JRT y no sobre la composición de la unidad apropiada en sí como ocurre en este caso y que, por tratarse este caso de un asunto atípico de representación, este foro tiene jurisdicción.
Por último, la HEDET expone en su comparecencia que la controversia en el caso no cae dentro de las excepciones reconocidas por el Tribunal Supremo porque el caso versa sobre una solicitud de excepción de una parte de la unidad y no de la totalidad de la unidad apropiada.
La controversia sobre la jurisdicción de este Tribunal para entender en un asunto relacionado con la determinación de la unidad apropiada bajo la Ley Núm. 45 ciertamente es novel. Por ser una ley de relativa corta edad, es necesario acudir a interpretaciones que nuestro Tribunal Supremo ha dado a esta controversia bajo estatutos con disposiciones similares sobre certificación del representante exclusivo. Requiere que analicemos los casos en los cuales el Tribunal Supremo se ha expresado sobre las excepciones a la doctrina de jurisdicción exclusiva del foro administrativo en los procesos de certificación del representante exclusivo al amparo de la Ley Núm. 130 del 8 de mayo de 1945, 29 L.P.R.A. § 61, et seq. (Ley Núm. 130)
En U.P.R. v. Asociación de Profesores, supra, el Tribunal Supremo tuvo ante sí la determinación de unidad apropiada en la Universidad de Puerto Rico (U.P.R.) que hizo la JRT bajo la Ley Núm. 130, supra. La JRT había decidido que la U.P.R. era un patrono para efectos de la Ley Núm. 130, que el Recinto de Río Piedras por sí sólo constituía una unidad apropiada y que los profesores, con algunas excepciones, eran empleados con derecho a sindicarse bajo esa Ley.
El Tribunal Supremo resolvió que era erróneo el planteamiento de ausencia de jurisdicción de ese foro. Expresó que la jurisdicción del Tribunal Supremo para revisar cuestiones de derecho en materia de relaciones obrero-patronales no se afectaba, sobretodo en casos como el que tenía ante su consideración en que los derechos afectados tenían rango constitucional. Id., pág. 345. Señaló que “...de ordinario, la revisión judicial de una orden de la Junta, en casos corrientes de representación, procede únicamente por la vía colateral, como parte de una determinación de la Junta sobre práctica ilícita de trabajo.” No obstante, expresó el Tribunal que ese prolongado proceso era innecesario en casos en los cuales el derecho a organizarse de empleados era el eje de la controversia.
El Tribunal fundamentó su intervención en la cuestión jurídica novel que presentaba el caso y en que debía dilucidarse final y definitivamente la controversia previo a que se pusiera en vigor la orden de elecciones recurrida.
Luego, en A.A.A. v. Unión, supra, el Tribunal Supremo revisó la determinación de la JRT sobre la *560 inclusión de los abogados de la corporación en una unidad apropiada. Al hacerlo dijo: “[Rjesulta evidente, pues, que tratándose de un caso muy distinto de aquéllos en los que sólo nos enfrentamos a circunstancias típicas de casos ordinarios de representación, en el presente caso tenemos jurisdicción para ejercer nuestra función revisor a... [A] sí pues, ausente de nuestra consideración la clase de empleados a quienes con mayor probabilidad les asista el derecho a sindicarse, evaluamos más bien el reclamo de un grupo que son categorizados por su patrono como empleados gerenciales y confidenciales. [E]n vista de lo anterior, nuestra intervención en esta etapa no acarrea el riesgo de fomentar prácticas dilatorias que obren en perjuicio de los derechos que cobijan a los obreros lo que con toda probabilidad sucedería dentro de un contexto industrial tradicional. ”
El planteamiento del DTRH en este caso es que la Unidad E, que agrupa a los mediadores del Negociado, debe ser eliminada en su totalidad, ya que dichos funcionarios son empleados confidenciales. Además, nos plantea que existe conflicto de intereses si estos empleados pertenecen a una unidad apropiada. Sostiene que esta es una controversia atípica que justifica la intervención de este foro aun en esta etapa, ya que no sólo envuelve una cuestión jurídica novel, sino que entraña un asunto de gran trascendencia al interés público debido a la importancia del papel que juega el Negociado en la solución de controversias obrero-patronales. A su entender, la controversia principal en este caso es si los mediadores y árbitros del Negociado son empleados confidenciales o si, por el conflicto de intereses que genera la sindicación con las funciones que realizan, deben quedar excluidos de todas las unidades apropiadas para fines de la negociación colectiva.
Los empleados de las oficinas y dependencias del DTRH que no trabajan para ADT, AAFET y CDORH con derecho a afiliarse bajo la Ley Núm. 45 están todos incluidos bajo la Unidad D del DTRH. Además de dicha Unidad D, la Comisión, entendiendo que los mediadores y empleados del Negociado tienen derecho tanto a organizarse como a negociar de forma colectiva, creó la Unidad E para que los mismos fueran agrupados de forma separada, y así les fuera garantizado el pleno disfrute de los derechos reconocidos bajo la Ley Núm. 45.
El DTRH no impugna la determinación sobre la composición de las unidades apropiadas de la agencia. El asunto planteado en el recurso de revisión no se limita a la inclusión o exclusión de algunos puestos dentro de la Unidad, sino a la creación de una unidad especial y separada para personas que atienden y resuelven controversias obrero-patronales bajo la Ley Núm. 130 o bajo la Ley Taft-Hartley. El DTRH entiende que la Unidad E debe ser eliminada en su totalidad y que los empleados que no sean mediadores incluidos bajo esa Unidad, como Auxiliares y Técnicos de Sistemas de Oficina del Negociado, se agrupen en otra unidad del DTRH. El DTRH expuso que las clases de mediadores deben ser excluidas de la composición de unidades apropiadas, puesto que sus labores como mediadores de conflictos obrero-patronales los sitúa en una situación de conflicto de interés entre las partes que presentan las quejas y agravios ante ellos.
El caso de autos, al igual que los casos discutidos previamente, presenta una controversia novel bajo una ley aprobada en el 1998. Requiere resolver una situación procesal no atendida de forma específica por los esquemas reglamentarios y estatutarios aplicables. Hospital del Maestro v. U.N.T.S., 151 D.P.R. 934 (2000). Nos corresponde evaluar si la decisión de la Comisión de reconocer el derecho a la negociación colectiva a los mediadores y crear una unidad apropiada separada para el Negociado, está sostenida por evidencia sustancial en el récord y si es correcta en derecho.
El análisis de los casos discutidos nos llevan a concluir que este foro tiene jurisdicción para atender el recurso presentado conforme al Artículo 10 de la Ley Núm. 45, 3 L.P.R.A. § 1452d, el Artículo 4.006(c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley Núm. 201 del 22 de agosto de 2003, según enmendada, la Regla 56 del Reglamento del Tribunal de Apelaciones, y además, en la LPAU.
III
Establecida nuestra jurisdicción, procedemos a evaluar el señalamiento de error.
*561 En el 1998 se aprobó la Ley Núm. 45 concediendo a los empleados públicos de las agencias de la Rama Ejecutiva, que no operan como entidades privadas, un derecho limitado a organizarse y a negociar colectivamente. La Ley Núm. 45 no permite la huelga y, diferente a las otras leyes laborales aplicables a Puerto Rico, establece parámetros para la negociación colectiva. El esquema de la Ley Núm. 45 se asemeja al esquema de la ley que rige las relaciones laborales de los empleados federales, la cual no permite el derecho a la huelga y regula las materias de negociación. 5 U.S.C. § 7101, et seq.
La Ley Núm. 45 no es de aplicación general. El legislador excluyó del derecho a organizarse y a negociar colectivamente a ciertas agencias y empleados por las funciones que realizan. Excluye de su aplicación a diferentes agencias, entre éstas, a la propia Comisión, la Oficina de Recursos Humanos del Estado Libre Asociado, la Oficina de Gerencia y Presupuesto, la Policía y el Departamento de Justicia. 3 L.P.R.A. § 1451d. También quedan excluidos de la ley los empleados con nombramientos de confianza, transitorios, irregulares, por jornal, empleados confidenciales, los funcionarios sujetos a confirmación legislativa y los. supervisores. 3 L. P.R.A. § 145 Id.
La Ley Núm. 45 define el término empleado confidencial como toda persona que tuviera conflicto de intereses o que participe significativamente en la formulación e implantación de política pública o que realice labores directas o indirectas en torno a las relaciones obrero-patronales. 3 L.P.R.A. § 1451a (p).
El Negociado, también conocido como el Servicio de Mediación y Conciliación en el Negociado de Conciliación y Arbitraje, es uno de los programas administrado y operado por el DTRH. Provee ayuda conciliatoria a las partes envueltas en controversias laborales y provee servicio de arbitraje libre de costo para la solución rápida de controversias originadas en la administración, aplicación e interpretación de convenios colectivos.
Además, el Negociado realiza labores de mediación preventiva en posibles conflictos obrero-patronales y ofrece servicios de mediación, conciliación y arbitraje a solicitud de uniones obreras o patronos. La efectividad del servicio que se ofrece depende de la capacidad, la imparcialidad y el conocimiento de la dinámica de los procesos de negociación colectiva de las personas que trabajan en el programa.
El Negociado opera con fondos recurrentes de las corporaciones públicas usuarias de sus servicios. Entre los puestos circunscritos a dicho Programa encontramos el de Director de Conciliación y Arbitraje Obrero, Mediadores de Conflictos Obrero-Patronales y personal administrativo y de oficina.
Respecto a la determinación de las unidades apropiadas, el Director del Negociado, Hon. Román Velasco, hoy Secretario del DTRH, explicó en la Sesión Especial para la Determinación de Unidades Apropiadas que se llevó a cabo, que los árbitros actúan como jueces laborales y que no se debe afectar su imagen de imparcialidad o promover que se cree una apariencia de conflicto de interés.
Debemos destacar que la definición de empleado confidencial incluye la aseveración de que no puede existir relación directa o indirecta con las relaciones obrero-patronales. La definición de empleado confidencial no ha sido interpretada por el Tribunal Supremo.
La ley habilitadora del DTRH establece que el Secretario del DTRH, mediante las agencias, servicios y negociados creados por ley, fomentará y estimulará las mejores relaciones entre obreros y patronos, mediando y conciliando con un alto espíritu tendente a conservar la paz industrial y el desenvolvimiento y progreso general en las disputas industriales. 3 L.P.R.A. § 306. A su vez, la ley permite delegar en funcionarios o empleados cualesquiera poderes, facultades, deberes o funciones que le hayan delegado excepto la facultad de adoptar o aprobar reglamentos o cualquier otra facultad que sea indelegable. 3 L.P.R.A. § 306 (10).
*562 La Ley Orgánica del DTRH establece que el deber del Negociado es intervenir y mediar en las disputas, conflictos o controversias industriales y agrícolas o de cualquier otra naturaleza relacionados con la aplicación de las leyes del trabajo que ocurran entre trabajadores y patrones, a fin de preserva)' la paz industrial. 3 L.P.R.A. § 320. Es de notar que la función que realizan los mediadores del DTRH es fundamental para cumplir con la política pública del departamento, y los árbitros son una parte fundamental para el logro de este objetivo programático estatutario. Es de vital importancia que el Negociado constituya un foro completamente imparcial que atienda las controversias de modo justo, rápido, sencillo y económico.
Es importante destacar que en la Sesión Especial el Director del Negociado, a preguntas de la Comisión, indicó que la unión peticionaria, UGT, representa empleados de corporaciones públicas y de entidades privadas que utilizan los servicios del Negociado. Aceptó que los sindicatos que representan empleados públicos cubiertos por la Ley Núm. 45 son divisiones separadas a los que representan empleados en el sector privado, pero añadió que los representantes de estas “divisiones” y los de la UGT que acudían al Negociado en controversias bajo la Ley Núm. 130 eran las mismas personas.
Por otro lado, el árbitro Ramón Santiago Fernández, en representación de la Unión de Empleados del Negociado, a preguntas de la Comisión, expresó que de darse una situación de posible conflicto, el Director o Subdirector del Negociado podía ofrecer el servicio de arbitraje. Ello podría ocurrir luego de que el árbitro decidiera inhibirse, ya que como los jueces, la determinación inicial de una inhibición le correspondería al árbitro al cual se le pide la inhibición. En caso de que el árbitro se inhibiera, se llevaría el asunto al director para una determinación sobre la persona a quien se le asignará el asunto. Reconoce que eventualmente sería una controversia para los tribunales.
No obstante, aun en el caso de una representación sindical independiente de los sindicatos que representan empleados de corporaciones públicas o entidades privadas, se pueden dar situaciones conflictivas y siempre existirá la apariencia de conflicto que afectaría la paz industrial, misión del DTRH. Tomemos por ejemplo que el sindicato que agrupe a los empleados del Negociado, Unidad E, participen o respalden una actividad de simpatía o de apoyo a otros sindicatos y que dicha actividad concertada genere casos disciplinarios que terminen en procesos de arbitraje que por disposición de los convenios se atienden en el Negociado. Vemos un conflicto de interés que restaría credibilidad a las funciones que cumple el Negociado con la cual se estaría soslayando la doctrina establecida por nuestro Tribunal Supremo, en cuanto a que un laudo de arbitraje goza de la naturaleza similar a la de una sentencia o decreto judicial y que la función del árbitro es análoga a la ejercida por un tribunal de instancia. Unión de la Industria Licorera de Ponce v. Destilería Serrallés, Inc., 116 D.P.R. 348 (1985).
La Comisión basa su decisión notificada el 10 de noviembre de 2003, en la cual reitera su decisión anterior de incluir a los Mediadores (as) de Conflictos Obrero-Patronales en sus cuatro niveles en la Unidad E del DTRH, en la interpretación que le han dado al término empleado confidencial. Para la Comisión, el conflicto de intereses mencionado en la definición del término se refiere al que ocurre en el contexto de las relaciones obrero-patronales o en la formulación e implantación de política pública de la agencia. Este conflicto puede materializarse en la interacción dentro del escenario de trabajo, esto es, un empleado frente a otro o en la interacción con la organización obrera. Sin embargo, en el caso de los mediadores del DTRH, dice la Comisión, que como no atienden casos bajo Ley Núm. 45 es imposible que vean casos de la organización obrera que directa o indirectamente los represente.
Sostiene, además, la Comisión, que los intereses de los empleados se preservan de forma más efectiva acogiendo la norma de la Secc. 7112 (c) del “Federal Service Labor-Management Relations Act” y condicionando a la organización laboral a que represente a los mediadores, mas no simultáneamente a empleados de patronos que puedan acudir ante estos mediadores y que no estén afiliados, directa o indirectamente, a una organización obrera o grupo de organizaciones obreras que representen empleados de *563 patronos que puedan acudir ante ellos. 5 U.S.C. § 7112 (c).
Es necesario destacar que en Puerto Rico aún no se ha interpretado el concepto “directa o indirectamente” bajo la Ley Núm. 45. Para entender la extensión de dicho concepto, es necesario referirnos a otras interpretaciones otorgadas al mismo, tales como la expresada en National Mediation Board and American Federation of Government Employees, 54 FLRA No. 126 (1998), en el cual se indicó que dicho concepto incluye toda relación entre uniones afiliadas, puesto que no existe ninguna categoría subsumida dentro del mismo. Dicha definición es cónsona con el propósito de la ley, en específico la sección 7112, de prevenir cualquier conflicto de interés o apariencia de conflicto de interés. Id.
Por otro lado, y como mencionáramos anteriormente, acorde a la Ley Núm. 45, el empleado confidencial es toda persona que tuviera conflicto de intereses o que participe significativamente en la formulación e implantación de política pública, o que realice labores directas o indirectas en torno a las relaciones obrero-patronales. 3 L.P.R.A. § 1451a (p). Como puede verse, lleva tres categorías separadas por la conjunción disyuntiva “o”. A base de dichas categorías y luego de analizadas las funciones que ejercen los Mediadores de Conflicto, concluimos que cumplen con la definición de empleado confidencial en sus tres partes. Es por ello, que objetamos la interpretación de la Comisión de que el conflicto de intereses tiene que darse entre un empleado frente a otro o entre un empleado y la organización obrera. Dicha aseveración es incorrecta, puesto que el conflicto de intereses puede darse de múltiples maneras y precisamente una de ellas es la que se da entre los mediadores y las partes a quienes éstos le prestan servicios. Su función neutral en controversias no puede coexistir con la vivencia de los intereses de una de las partes que asiste. Si bien es cierto que no puede adelantar-los intereses gerenciales o de los patronos, tampoco puede adelantar los intereses de las organizaciones laborales. Ciertamente, lo último no lo logra participando y defendiendo la postura laboral frente a su patrono. La integración y la vivencia en una organización sindical socavan la neutralidad necesaria para la función mediadora y de arbitraje.
Además, no podemos pasar por alto que los servicios que ofrece el Negociado implantan la política pública del DTRH de mantener la paz laboral mediante servicios de mediación, conciliación y arbitraje, en los cuales la imparcialidad es la base de esa política púbbca. Tal y como señala el DTRH en su escrito de revisión, del análisis de la Hoja de Deberes de los Mediadores de Conflictos Obrero-Patronales se desprende que dichos empleados ejercen funciones que tendrían un conflicto o potencial conflicto o una apariencia de conflicto de intereses, y porque también, participan significativamente en la formulación e implementación de política pública y realizan labores directas o indirectas en tomo a las relaciones obrero-patronales. Por tanto, erró la Unión de Empleados del Negociado de Investigación y Arbitraje del DTRH (UENLA) al plantear en su Memorando en Cumplimiento de Orden que la clase de Mediadores de Conflictos Obrero-Patronales no contiene elementos de confidencialidad ni representa un conflicto de intereses que le impida organizarse bajo la Ley Núm. 45.
Las determinaciones emitidas por la Comisión merecen la más alta deferencia, dado su conocimiento administrativo y especializado. Sabido es que el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar si existe una base racional respaldada por evidencia sustancial que sostenga la decisión o interpretación impugnada. A estos fines, evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Rebollo v. Yiyi Motors Ambar, Inc., 2004 J.T.S. 4, opinión del 13 de enero de 2004; Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 131, (1998); Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953).
Es, además, un principio firmemente establecido que las decisiones de las agencias administrativas tienen a su favor una presunción de legalidad y corrección, la cual debe ser respetada por los tribunales mientras la parte que las impugna no produzca suficiente evidencia para derrotarlas. Misión Ind. P.R. v. J.P., supra; Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 210 (1987).
*564 Pero la deferencia reconocida a las agencias administrativas cederá cuando se de alguna de las siguientes circunstancias: (1) cuando la misma no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley; (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra en alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. Otero Mercado, et al v. Toyota de Puerto Rico Corp., et al, 2005 J.T.S. 13, opinión del 3 de febrero de 2005.
En el caso de autos, la Comisión erró en su aplicación de la ley. Como ya indicáramos, los mediadores caen dentro de la categoría de empleados confidenciales y aun cuando no decidirán ni resolverán controversias al amparo de la Ley Núm. 45, podrían entrar en conflicto al estar unionados y representados por una unión afiliada a otra u otras, que podrían recurrir ante ellos para que medien o presten servicios de arbitraje en alguna situación contra sus respectivos patronos.
No nos persuade la aseveración de la Unión de Empleados del Negociado en cuanto a que aun si un árbitro fallase en sus deberes y responsabilidades adjudicativas y de imparcialidad, “siempre será posible constatarla dentro del propio mecanismo que provee la misma institución del arbitraje, el reglamento del NCA y en última instancia el poder revisor de los Tribunales de Justicia.” Esta aseveración es incompatible con las funciones y responsabilidades del mediador. Dicha aseveración ataca el principio de imparcialidad y trata de justificar el error que se cometería al permitir a los mediadores del Negociado unionarse. La imparcialidad que debe reflejar el Negociado no se conserva mediante el mecanismo de la inhibición o pensando en la existencia de un foro superior que podrá revisar y resolver una decisión desacertada o planteamientos de conflictos.
En último lugar, la Comisión da una interpretación limitada a la frase “que realice labores directas o indirectas en torno a las relaciones obrero-patronales”. El Negociado cumple una función sin precedente; por lo tanto, en la mayoría de los casos es correcta la apreciación de que las relaciones laborales se dan hacia dentro, o sea, entre los empleados, el patrono y la o las organizaciones laborales que representan empleados en ese centro de trabajo. No obstante, la regla general admite excepciones en situaciones como la de los Mediadores que tienen una vinculación y responsabilidad con las relaciones obrero-patronales del país.
IV
Por las razones expuestas, se revoca la determinación suplementaria de la Comisión de crear una unidad independiente en el DTRH para incluir a los Mediadores de Conflictos Obrero-Patronales del DTRH.
Lo acordó el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones